IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JERRY LEWIS RIVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 316-024 |
| | ) | |
| SHAWN EMMONS; MITZI HALL; | ) | |
| and SHARON SUTTON, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Johnson State Prison in Wrightsville, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case. Before the Court is Defendants' motion for summary judgment. (Doc. no. 29.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion for summary judgment be **GRANTED**, a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

**I.    PROCEDURAL BACKGROUND**

Because Plaintiff is proceeding IFP, the Court screened Plaintiff's complaint in compliance with the IFP statute, 28 U.S.C. §§ 1915(e) and 1915A. The Court allowed Plaintiff to proceed with a claim for deliberate indifference to a serious medical need, based on Plaintiff's allegations prison officials denied him a prosthetic leg and treatment for vascular problems. (See doc. nos. 1, 10.) Plaintiff asserts this claim against Defendants Shawn Emmons, former warden at Johnson State Prison ("JSP"), Mitzi Hall, Director of

Nursing at JSP, and Sharon Sutton, Registered Nurse assigned by the Medical College of Georgia to assist with inmate healthcare. (Doc. nos. 1; 1-1, p. 3.) Plaintiff seeks a court order requiring Georgia Department of Corrections (GDC) to provide him with a prosthetic leg, therapy with the prosthesis, and a medical exam by a vascular surgeon. (Doc. no. 1-1, p. 5). Plaintiff also seeks compensatory, nominal, and punitive damages for pain and mental anguish. (Id.)

Because Defendants submitted a Statement of Material Facts pursuant to Loc. R. 56.1, to which Plaintiff never responded, the Court deems admitted all facts in that Statement which find support in the record and Plaintiff has not properly opposed. Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000); Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' statements of material fact admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objection to statement). However, Defendants, as movants, continue to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review Defendants' representation of the record, including Plaintiff's sworn deposition testimony, and factually supported opposition to the Statement of Material Facts, "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II.  FACTS

Plaintiff's right leg was amputated in 2008, prior to his incarceration, after a tree fell

on his knee. (Pl. Dep., doc. no. 29-3, p. 26-27.) On July 18, 2013, Plaintiff came into GDC's custody at Georgia Diagnostic and Classification Prison after being sentenced to twelve years of incarceration for attempted rape. (Id. at 17; Emmons Decl., doc. no. 29-4, ¶ 7.) Although Plaintiff had a prosthetic leg prior to his incarceration, he was not wearing it when taken into custody on July 18, 2013, because it did not fit well and "kept coming off." (Id. at 28-30.) On March 20, 2014, Plaintiff was transferred to JSP, where he remains incarcerated. (Emmons Decl. ¶ 7.) Plaintiff has had a wheelchair throughout his incarceration at JSP but no prosthetic leg. (Pl. Dep., p. 33.) Plaintiff suffered back pain and fatigue from being in a wheelchair. (Id. at 47.) Plaintiff testified he has not fallen at JSP. (Id. at 47-48.)

GDC procedures require Utilization Management Services ("UM") to review and approve prisoner medical consultation requests, including prosthesis consultations. (Hall Decl., doc. no. 29-5, ¶¶ 14-15; Sutton Decl., doc. no. 29-5, ¶ 23.) Only UM staff may approve or deny requests for consultations or procedures. (Hall Decl. ¶ 19; Sutton Decl. ¶ 24.) Defendants did not have authority to overrule decisions made by UM. (Emmons Decl. ¶ 15; Hall Decl. ¶ 30; Sutton Decl. ¶ 26.)

On May 29, 2014, a medical consultation request was submitted to evaluate Plaintiff for a prosthesis. (Hall Decl. ¶ 23; doc. no. 29-7, p. 3.) Dr. Wayne Wells at UM denied the request on January 6, 2015, commenting Plaintiff entered the system without a prosthesis. (Hall Decl. ¶¶ 22, 25; doc. no. 29-7, pp. 3-4.) A new consultation was requested for Plaintiff on March 5, 2015. (Hall Decl. ¶ 26; doc. no. 29-7, p. 5.) Dr. Wells again denied the request, noting there had been no acute changes in Plaintiff's condition and Plaintiff should continue

3

with his current mode of transportation by wheelchair. (Id.) On May 31, 2016, a third consultation request was submitted on behalf of Plaintiff for approval of a prosthesis. (Hall Decl. ¶ 27; doc. no. 29-7, pp. 6-7.) UM approved the request, and Plaintiff received a prosthesis on September 20, 2016. (Id.; doc. no. 29-7, pp. 7-8.) Plaintiff presently undergoes physical therapy for his right leg and exercises for his left leg. (Pl. Dep., pp. 45, 48.)

Mr. Shawn Emmons was warden at JSP from October 15, 2016, until July 1, 2017. (Emmons Decl. ¶ 3.) Plaintiff met with Mr. Emmons once to discuss obtaining a prosthesis. (Pl. Dep., p. 36; Emmons Decl. ¶ 9.) Mr. Emmons spoke to medical personnel following the meeting and learned Dr. Wells of UM had already denied Plaintiff's request for a prosthesis. (Emmons Decl. ¶ 9.) Mr. Emmons informed Plaintiff of the denial. (Id.) Plaintiff testified he also asked Mr. Emmons about obtaining his old prosthesis from home, but Mr. Emmons told him he could not "get that leg from home because it might have contraband in it and he was afraid if they take it . . . loose, they might not put it back together like it was." (Pl. Dep., p. 36) Plaintiff did not mention to Mr. Emmons his alleged falls in the shower or from bed or his requests for vascular treatment. (Emmons Decl. ¶ 10.) As warden, Mr. Emmons had no authority to direct medical care, request consultations from UM, approve or deny consultation or procedure requests, or overrule UM decisions. (Id. ¶¶ 12, 15-16.) Mr. Emmons did not direct Plaintiff's medical care or treatment. (Emmons Decl. ¶ 17.)

Ms. Mitzi Hall is the Director of Nursing at JSP. (Hall Decl. ¶ 3.) Ms. Hall does not treat inmates directly. (Id. ¶ 31.) On November 3, 2014, Ms. Hall noted on Plaintiff's medical problem list he is in a wheelchair due to an above the knee amputation of his right

4

leg. (Id. ¶ 32.) On August 28, 2014, Ms. Hall noted in Plaintiff's record he should be treated prophylactically due to a trend of scabies in his dorm. (Id. ¶ 33.) On March 23, 2016, Ms. Hall noted in Plaintiff's record the need for a new consult concerning Plaintiff's request for a stump shrinker. (Id. ¶ 34.) Plaintiff never reported to Ms. Hall falling in the shower or his bed or needing vascular treatment. (Id. ¶¶ 35-36.)

Plaintiff only met with Ms. Hall once. (Pl. Dep., pp. 37-38.) At that meeting, Plaintiff asked Ms. Hall about obtaining his old prosthesis. (Id.) Ms. Hall directed Plaintiff to speak with the CERT team about the issue. (Id.) Plaintiff states he asked Ms. Hall for a prosthesis and she told him he did not "deserve a leg" because he did not have one when he arrived at JSP. (Id. at 34.) Ms. Hall states she never told Plaintiff he did not deserve a prosthesis. (Id. ¶ 37.) Plaintiff testified Ms. Hall never treated him and never refused to give him medical treatment. (Pl. Dep., p. 53.)

Ms. Sharon Sutton is a registered nurse employed by Georgia Correctional Health Care and was assigned to assist with healthcare to inmates in GDC facilities. (Sutton Decl. ¶ 3.) She has met with Plaintiff on several occasions during his incarceration at JSP. (Id. ¶¶ 10-18.) On September 23, 2014, Plaintiff complained of pain and requested a TENS unit and socks for his stump. (Id. ¶ 10.) Ms. Sutton noted Plaintiff's consult for a prosthesis was pending and referred Plaintiff to an upper level provider for assessment and evaluation for his pain. (Id.) Plaintiff later received a TENS unit for his "phantom pain." (Pl. Dep., p. 51.) On January 27, 2015, Plaintiff complained he fell out of his wheelchair, injuring his left wrist and right stump. (Sutton Decl. ¶ 11.) Ms. Sutton provided Motrin and a warm compress and referred Plaintiff to an upper level provider. (Id.) On April 13, 2015, Plaintiff complained of

right stump swelling and requested a walker and prosthesis. (Id. ¶ 13.) Ms. Sutton referred Plaintiff to an upper level provider for assessment and evaluation. (Id.) On May 26, 2015, Plaintiff again requested a stump shrinker and a prosthesis. (Id. ¶ 14.) Ms. Sutton informed Plaintiff the prosthesis was not approved and referred him to an upper level provider for assessment and evaluation. (Id.)

On September 28, 2015, Plaintiff informed Ms. Sutton he had fallen two or three times a week due to dizziness.[1] (Id. ¶ 17.) Ms. Sutton noted Plaintiff was in physical therapy five times a week and ambulating with a walker. (Id.) She referred Plaintiff to an upper level provider regarding his dizziness. (Id.) On March 30, 2016, Plaintiff complained of left foot numbness and a "knot" under his big toe. (Id. ¶ 18.) Ms. Sutton noted Plaintiff uses a wheelchair and wears a soft shoe on his left foot. (Id.) She referred Plaintiff to an upper level provider. (Id.) Plaintiff states Ms. Sutton treated him when he went in for sick call but does not recall any particular conversations. (Pl. Dep., pp. 41-42.) Plaintiff states Ms. Sutton never refused to give him medical treatment. (Id. at 53.)

Plaintiff never reported needing treatment for vascular issues to Defendants Emmons and Hall. (Emmons Decl. ¶ 10; Hall Decl. ¶ 36.) Additionally, Plaintiff does not have circulation issues and has not been told he needs to see a circulation specialist. (Pl. Dep., pp. 52-53.) Furthermore, a medical problem list kept at the front of each GDC inmate's medical chart documents long-term medical conditions or short-term conditions resulting in permanent changes to an inmate's health care. (Hall Decl. ¶ 7.) Plaintiff's medical problem

---

[1] In his objections, Plaintiff states the falls he reported to Ms. Sutton and attributed to dizziness were due to "phantom pain" in his stump. (Doc. no. 35, p. 10.)

list indicates a history of seizures, an above-knee amputation of his right leg, hypertension, diabetes, and non-compliance in taking Neurontin. (Id. ¶ 10.) The list does not indicate a diagnosis of vascular or circulation problems. (Id. ¶ 12; Sutton Decl. ¶ 21.)

## II. DISCUSSION

### A. Defendants Are Entitled to Summary Judgment Because Plaintiff Cannot Establish an Eight Amendment Violation.

Defendants argue at summary judgment that, even assuming Plaintiff had an objectively serious medical need, Plaintiff cannot show Defendants knew of or disregarded a serious risk of harm or Defendants caused an injury to Plaintiff. (See doc. no. 29-2, pp. 10-12.) Plaintiff argues summary judgment is not appropriate because: (1) GDC policies purposefully delay treatment of prisoners to increase profits; (2) Defendants admitted they prevented Plaintiff from obtaining an opinion from a vascular specialist; (3) he has fallen multiple times due to not having a prosthesis; and (4) he has not been able to obtain his medical records. (See doc. no. 35, p. 3-6, 10-11.)

#### 1. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no

7

reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Id. at 608.  The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).  Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.

### 2. Deliberate Indifference Standard

To prevail on a claim for deliberate indifference to a serious medical need, Plaintiff must prove that:  (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3)

his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). To satisfy the subjective component a defendant was deliberately indifferent to his serious medical need, Plaintiff must show that person: (1) was subjectively aware of a serious risk of harm and (2) disregarded that risk (3) by following a course of action which constituted "more than [gross] negligence." Id. at 1326-27.

### 3. Plaintiff Cannot Establish an Eight Amendment Violation.

Even assuming Plaintiff has demonstrated a serious medical need under the first element, as Defendants concede for their motion, (doc. no. 29-2, p. 10), Plaintiff cannot show Defendants were deliberately indifferent to his medical needs or caused his injury by wrongful conduct. Goebert, 510 F.3d at 1326. Additionally, Plaintiff cannot show Defendants actually participated in the alleged constitutional violation or a causal connection between Defendants and the alleged constitutional violation. Hartley, 193 F.3d at 1269. Thus, Defendants are entitled to summary judgment.

#### a.     **Defendant Emmons**

Plaintiff testified he met with Mr. Emmons only once to ask about obtaining either his old prosthesis from home or a new prosthesis. (Pl. Dep., pp. 36, 42.) Mr. Emmons confirms he met with Plaintiff once to discuss obtaining a new prosthesis. (Emmons Decl. ¶ 9.) At that meeting, Plaintiff did not discuss falling in the shower or from bed or any alleged vascular issues. (Id. ¶ 10.) Following his conversation with Plaintiff, Mr. Emmons spoke to medical personnel, who informed him the consultation request for a new prosthesis was denied, and he informed Plaintiff of the denial. (Id. ¶ 9.) Plaintiff states Mr. Emmons denied his request to obtain his prosthesis from home because it would have to be searched for contraband and Mr. Emmons was concerned about the prison staff's ability to reconstruct the prosthesis. (Pl. Dep., p. 36.)

There is no evidence to suggest Mr. Emmons was subjectively aware of a serious medical need. Because prostheses are not always medically necessary for amputees, Mr. Emmons' knowledge of Plaintiff's amputation alone was insufficient to create a subjective awareness of a serious medical need. See Simpson v. Holder, 200 F. App'x 836, 839-40 (11th Cir. 2006) (no deliberate indifference for denial of prosthetic leg where plaintiff's weight precluded fitting); Still v. Darbouze, Civil Action No. 2:11cv141-MHT, 2014 WL 1239118, *3-4 (M.D. Ala. Mar. 25, 2014) (same where plaintiff faced risk of falling and his leg and hip lacked sufficient strength).

Additionally, Mr. Emmons was entitled to rely on Dr. Wells' denial of Plaintiff's request for a prosthesis. Dunn v. Hart, CV 513-131, 2016 WL 5661058, *9 (S.D. Ga. Sept. 29, 2016) ("[I]n the absence of a reason to believe, or actual knowledge, that medical staff is

administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference."). Medical personnel informed Mr. Emmons that Dr. Wells had already denied Plaintiff's request for a new prosthesis. (Emmons Decl. ¶ 9.) Mr. Emmons could rely on the denial to determine a prosthesis was not medically necessary. Plaintiff has provided no evidence to suggest Mr. Emmons had actual knowledge or reason to believe Dr. Wells was administering inadequate medical care. Furthermore, Plaintiff never informed Mr. Emmons of alleged vascular issues. (Id. ¶ 10.) Accordingly, Mr. Emmons was not subjectively aware of a serious medical need.

Second, there is no evidence Mr. Emmons disregarded Plaintiff's medical concerns. As warden of JSP, Mr. Emmons had no authority to (1) direct medical care, (2) request a consultation from UM, (3) approve or deny consultation requests, or (4) overrule decisions made by UM. (Emmons Decl. ¶¶ 12, 14-16.) Furthermore, Plaintiff has not disputed that Mr. Emmons had no personal involvement in any aspect of his medical care.

Finally, there is no evidence Mr. Emmons followed a course of action which constituted "more than [gross] negligence" or any alleged injury sustained was the result of Mr. Emmons' wrongful conduct. Goebert, 510 F.3d at 1326. For these reasons, no reasonable juror could find, based on the undisputed facts, that Mr. Emmons knew about a risk of serious harm that he disregarded.

### b. Defendant Hall

Similarly, no reasonable juror could find Defendant Hall was subjectively aware of a serious risk of harm to Plaintiff and indifferent to his medical concerns. Ms. Hall stated, although she does not treat patients directly, she made two entries on Plaintiff's medical

problem list related to his prosthesis.  (Hall Decl. ¶¶ 31-32, 34.)  She noted (1) Plaintiff was in a wheelchair due to an amputation of his right leg above the knee and (2) Plaintiff requested a stump shrinker and a new consult would be needed.  (Id. ¶¶ 32, 34.)  Plaintiff never reported any falls or vascular problems to her.  (Id. ¶¶ 36-37.)  Furthermore, Ms. Hall had no indication Plaintiff suffered from alleged vascular issues.  (Id. ¶¶ 11-12, 36.)  Thus, Ms. Hall was not aware of a serious risk of harm to Plaintiff.

Additionally, Ms. Hall did not disregard Plaintiff's medical needs.  Although she was aware of Plaintiff' request for a prosthesis, Ms. Hall was not able to request, approve, or deny a consult or procedure and did not have authority to overrule a UM decision. (Id. ¶¶ 16, 19, 30.)  Plaintiff testified Ms. Hall never treated him and never refused to give him medical treatment.  (Pl. Dep., pp. 39, 53.)  Furthermore, neither Ms. Hall nor any other Defendant admitted they prevented Plaintiff from seeing a vascular specialist, as Plaintiff claims without evidentiary support in his opposition.  (Doc. no. 35, p. 6.)

Plaintiff testified he met with Ms. Hall on only one occasion to discuss obtaining a prosthesis, and, at that meeting, she stated Plaintiff did not "deserve" a leg because he entered the prison system without one.  (Pl. Dep., p. 34, 37.)  Ms. Hall denied the allegation. (Hall Decl. ¶ 35.)  However, even if Ms. Hall told Plaintiff he did not deserve a prosthesis, she was not in a position to control whether Plaintiff obtained a prosthesis or even a consultation from UM.  (Id. ¶¶ 16, 19.)

Finally, there is no evidence Ms. Hall followed a course of action which constituted "more than [gross] negligence" or any alleged injury sustained was caused by Ms. Hall's wrongful conduct.  Goebert, 510 F.3d at 1326.

### c.  Defendant Sutton

Ms. Sutton met with Plaintiff on several occasions.  (Sutton Decl. ¶¶ 10-18.)  Over the course of these meetings, Plaintiff:  (1) complained of pain and requested a TENS unit and socks for his stump, (Id. ¶ 10); (2) complained he fell out of his wheelchair, injuring his left wrist and right stump, (Id. ¶ 11); (3) complained of right stump swelling and requested a walker and prosthesis, (Id. ¶ 13); (4) again requested a stump shrinker and a prosthesis, (Id. ¶ 14); (5) informed Ms. Sutton he had fallen two or three times a week due to dizziness, (Id. ¶ 17); and (6) complained of left foot numbness and a "knot" under his big toe.  (Id. ¶ 18).  Following each of these meetings, Ms. Sutton referred Plaintiff to upper level providers for treatment.  (Id. ¶¶ 10, 11, 13, 14, 17, 18.)  Ms. Sutton had no indication Plaintiff had been diagnosed with any vascular or circulatory issues.  (Id. ¶ 21.)

Like Ms. Hall, Ms. Sutton was not able to request, approve, or deny a consult or procedure and did not have authority to overrule a UM decision.  (Sutton Decl. ¶¶ 24-26.)  Additionally, every time Plaintiff complained to Ms. Sutton about amputation-related issues, Ms. Sutton referred Plaintiff to an upper-level provider for assessment and evaluation of his complaints.  (Id. ¶¶ 10-11, 13-14, 18.)  Plaintiff testified Ms. Sutton never refused to give him medical treatment.  (Pl. Dep., p. 53.)

Based on these undisputed facts, no reasonable juror could find Ms. Sutton disregarded a serious risk of harm, followed a course of action which constituted "more than [gross] negligence," or committed any act or omission that caused Plaintiff's alleged injury.  Goebert, 510 F.3d at 1326.

In sum, when drawing all justifiable inferences in Plaintiff's favor, no genuine dispute

of material fact remains as to Plaintiff's deliberate indifference claim against Defendants, and they are entitled to summary judgment. In light of this conclusion, it is unnecessary to address Defendants' assertion of qualified immunity. (Doc. no. 29-2, pp. 13-15.)[2]

### 4. Plaintiff Does not State a Claim for Supervisory Liability under § 1983.

"Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Florida Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) ("Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Therefore, to hold a defendant liable, a plaintiff must demonstrate that either (1) the defendant actually participated in the alleged constitutional violation, or (2) there is a causal connection between the defendant's actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [s]he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or

---

[2]The Court does note that if it were to find Defendants were deliberately indifferent by depriving Plaintiff of a prosthesis, a qualified immunity defense would not be available. See Gilmore v. Hodges, 738 F.3d 266, 274-75 (11th Cir. 2013) ("We have, however, long held that deprivation of . . . prosthetic devices stated an Eighth Amendment violation because the unavailability of . . . prostheses may lead to 'severe harm.'")

policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).  The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Defendants argue, to the extent Plaintiff attempts to hold them liable for the actions of others, he does not have a viable claim.  (Doc. nos. 29-2, pp. 12-13; 42, pp. 5-6.)  In his complaint, Plaintiff's allegations against Defendants relate only to their personal actions.  (Doc. no. 1, p. 15.)  Thus, it does not appear Plaintiff attempts to hold Defendants liable under a theory of supervisory liability.  However, even if Plaintiff were attempting to raise a supervisory liability claim against Defendants, he has failed to present any supporting evidence.

Plaintiff has alleged neither a "history or widespread abuse" nor presented evidence of Defendants directing subordinates to act unlawfully or knowingly failing to stop them from doing so.  Brown, 906 F.2d at 671; Cottone, 326 F.3d at 1360.  Additionally, there is no evidence of any custom or policy adopted by or known to Defendants that caused a delay in Plaintiff obtaining a prosthesis.  Hartley, 193 F.3d at 1269.

Plaintiff asserts, without the benefit of evidence, that Georgia Department of

Corrections policies, Southern Health Partners, Inc., and UM are responsible for delaying treatment to prisoners in order to "funnel more profits from federal grant tax funds . . . ." (Doc. no. 35, pp. 4-6.)  Simply relying on conclusory allegations without supporting evidence will not suffice at summary judgment.  Morris, 663 F.2d at 1034.  Furthermore, Plaintiff does not allege Defendants played any role in formulating the policies he claims are responsible for the alleged delay in treatment.  (Id.)

### III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the motion for summary judgment be **GRANTED**, (doc. no. 29), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 7th day of February, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA